Lawrence D. NIGH, Geneva E. Nigh, Michael J. Weishan, Kathy Weishan, Greg L. Molkentine, Laurel Molkentine, Sigfredo Soto and Eleanor Soto, Plaintiffs,

v.

DOW CHEMICAL COMPANY, a Delaware corporation; Stauffer Chemical Company, a Delaware corporation; Vulcan Materials Company, a New Jersey corporation; Weevilcide Company, Inc., a Kansas corporation; Research Products Company, a Kansas corporation, Defendants.

No. 85–C–63–S.

United States District Court, W.D. Wisconsin.

May 22, 1986.

**1514**

Robert A. Slattery, Frisch, Dudek & Slattery, Milwaukee, Wis., for plaintiffs.

David M. Bernick, Kirkland & Ellis, Chicago, Ill., David B. Bartel, Borgelt, Powell, Peterson & Frauen, Ralph A. Weber, Quarles & Brady, Milwaukee, Wis., Harry Sauthoff, Jr., Thurow, Sauthoff & Alexander, Madison, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Before the Court are the post-trial motions of the only prevailing plaintiffs, Lawrence Nigh and his wife Geneva, and the only remaining defendants.* Plaintiff seeks a new trial on the issue of punitive damages against the Weevil-Cide Company, Inc. and Research Products Company; and a new trial against Dow Chemical Company, which prevailed against the plaintiff on the question of liability. Weevil-Cide Company and Research products seek judgment notwithstanding the verdict or, alternatively, a new trial with respect to the judgment entered against them in favor of the plaintiff. Plaintiff in this diversity action sought damages against several manufacturers of liquid grain fumigants to which he was exposed and allegedly injured during the course of his employment at the Cargill Grain Elevator. Plaintiff prevailed against Weevil-Cide and Research Products and was awarded $104,000 in damages. Other defendants, including Dow Chemical Company, were dismissed, all by judgment entered February 11, 1986.

## MEMORANDUM

I. *Weevil-Cide/Research Products' Motion for JNOV or New Trial*

 Weevil-Cide/Research Products (hereinafter, "Weevil-Cide" or "defendant") sold Weevil-Cide fumigant after the old Weevil-Cide company (a Missouri corporation) was purchased by Research Products in 1967. Plaintiff Lawrence Nigh was exposed to the fumigant both before and after 1967, and plaintiff concedes that the liability of the defendant must be based on the exposure to the fumigant after 1967. It is Weevil-Cide Company's contention that plaintiff produced no proof that post-1967 exposure caused his injuries.

Plaintiff established, sufficiently to defeat any post-trial motion to the contrary, that he suffered an injury that was caused by his exposure to carbon disulfide contained in an 80/20 fumigant known as Weevil-Cide. It is undisputed that this exposure occurred prior to 1967, and further, that he continued to be exposed to the product after that date. Plaintiff's experts testified, when asked when plaintiff "contracted" carbon disulfide poisoning, that it started prior to 1967. However, none of plaintiffs' experts testified directly that plaintiff's post-1967 exposure caused his injury.

The Court concludes that such direct testimony is not essential, and Weevil-Cide has pointed to no authority holding that it is. The jury was entitled to infer from expert testimony that the effects of exposure to carbon disulfide were cumulative and that plaintiff's injuries were caused, at least in part, by the later exposure. In fact, there was evidence (Exhibit 481 as cited by plaintiff in his reply brief at page 4–5) that continued exposure will cause a worsening of polyneuropathy and, more important, that improvement might be expected if exposure were eliminated or reduced.

The only authority bearing on the question even marginally is *Sumnicht v. Toyota Motor Sales, U.S.A., Inc.*, 121 Wis.2d 338, 360 N.W.2d 2, (1984). The Supreme Court of Wisconsin discussed the allocation of proof in the context of a "second collision" strict liability action against a car maker whose allegedly faulty interior design caused injuries that would not have been incurred in the original collision. While the factual differences between that case and this one cannot be ignored, several statements of general applicability are pertinent:

> The rule of strict liability, as adopted in Wisconsin, requires proof that the product was in a defective condition, unreasonably dangerous, which caused the plaintiff's harm. The long-standing test for cause in Wisconsin is whether the defect was a substantial factor in producing the injury. We have held:
>
> > It need not be the sole factor or the primary factor, only a "substantial

factor." The phrase substantial factor denotes that the defendant's conduct has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense. There may be several substantial factors contributing to the same result.

> The requirement ... that the plaintiff prove the extent of enhancement of injuries would, in some cases, require the plaintiff to isolate that portion of injuries caused solely by the manufacturer. This may be an impossible task and is not required by the law of this state.

*Id.* at 11 (citations omitted). The Court went on to hold that once cause is shown the plaintiff is not required to "prove what portion of indivisible harm is attributable solely to the manufacturer." *Id.*

In this case, plaintiff proved that his injuries were caused by carbon disulfide poisoning which began with exposure to the product of the old Weevil-Cide company before 1967 and continued with post-1967 exposure to the product of the defendant. This is a textbook case of indivisible harm. The expert testimony was certainly sufficient for the jury to conclude that plaintiff's injury was a result of lengthy exposure to toxic levels of carbon disulfide which occurred both before and after 1967.

## II. *Plaintiff's Motion for a New Trial on the Issue of Punitive Damages*

After the jury returned a liability verdict in favor of the plaintiff against Weevil-Cide the Court refused to allow the question of punitive damages to go to the jury in the damage phase of the trial. Noting that the complaint had not sought punitive damages against Weevil-Cide, the Court allowed leave to amend the complaint to state such a claim prior to the damage portion of this bifurcated trial. After all testimony was concluded, however, it further found that punitive damages against Weevil-Cide would not be appropriate.

The jury's verdict concerning the comparative negligence of Weevil-Cide and plain-

tiff (30 percent and 20 percent, respectively) does not bear on the question, contrary to the assertion of the defendant. Nonetheless, the Court concludes that the decision to direct a verdict on the punitive damage question was correct. There is no dispute concerning the standard for the award of punitive damages. Plaintiff must prove, by clear, satisfactory, and convincing evidence (a middle burden or proof), that the wrongdoer's conduct was "outrageous" in the sense that there must at least be "specific knowledge of a product defect and its potential for harm before an exemplary award is appropriate." *Wangen v. Ford Motor Co.*, 97 Wis.2d 260, 294 N.W.2d 437, 444 (1980); *Walter v. Cessna Aircraft Co.*, 121 Wis.2d 221, 358 N.W.2d 816, 820 (App.1984). There need not, however, be an intent to injure. *Walter*, 358 N.W.2d at 819.

■ It is clear that "outrageous" conduct is shorthand for "a flagrant indifference to the public safety," as noted by the *Walter* court. That court also adopted a five factor test, as proposed by Professor Owen in *Punitive Damages in Products Liability Litigation*, 74 Mich.L.Rev. 1258 (1976), to determine whether there has been such conduct. Those factors are:

> (1) the existence and magnitude in the product of a danger to the public;
>
> (2) the cost and feasibility of reducing the danger to an acceptable level;
>
> (3) the manufacturer's awareness of the danger, and of the availability of a feasible remedy;
>
> (4) the nature and duration of, and the reasons for, the manufacturer's failure to act appropriately to discover or to reduce the danger; and
>
> (5) the extent to which the manufacturer purposefully created the danger.

*Walter*, 358 N.W.2d at 820. While the first two factors above might arguably dictate a submission of the question to the jury (if only because they essentially are sufficiently proved by the negligence verdict), consideration of facts relevant to the remainder of these factors dictates the opposite. The defendant's employee responsible for the failure amounting to negligence in this case was Frank Blodgett, who had been something of a pioneer in the development of 80/20 fumigants. The evidence concerning his conduct painted a picture of a man simply incapable of accepting evidence contrary to his beliefs. This kind of negligence contradicts the assertion that defendant had the kind of awareness of the danger necessary to justify punitive damages. Nor is there any indication that defendant acted with the kind of purposefulness with respect to the creation of the danger required by Wisconsin law. Missing in this case is the kind of aggravation of simple negligence that would justify an award of punitive damages. Evidence that the defendant imposed more cautious handling of the product by its own employees does not create a strong enough inference of specific knowledge given the middle burden of proof applicable here.

III. *Plaintiff's Motions for a New Trial With Respect to Dow Chemical Company*

Plaintiff's motions for a new trial with respect to the jury's verdict in favor of Dow Chemical raises numerous issues. They will be addressed in the order presented.

A. Plaintiff first argues that the Court should not have given an instruction concerning the bulk supplier doctrine. He argues that the defense is not recognized in Wisconsin and, in fact, is contrary to *Shawver v. Roberts Corp.*, 90 Wis.2d 672, 280 N.W.2d 226 (1979), where the Court concluded that "[o]ne who markets an unreasonably dangerous product is not entitled to expect that others will make it safe."

■ The bulk supplier doctrine, the instruction for which the Court adapted from G.Z. Nothstein, *Toxic Torts*, McGraw Hill, 1984, § 14.09, is basically a recognition of the fact that a manufacturer (Dow manufactured the fumigant sold under Weevil-Cide's label) may be unable to control the packaging, and therefore the warning communicated to the ultimate user, when the labels of an intermediate seller are affixed to the product. That occurred here, and

the Court will assume that the jury's verdict in favor of Dow was based on the proposition that Dow had no responsibility for the inadequate warnings that reached the plaintiff.

■ The fact that the defense has not been explicitly recognized in Wisconsin is not determinative inasmuch as the doctrine has not been rejected either. The Court must anticipate how the Wisconsin courts would answer this question of first impression. The weight of authority from other jurisdictions, as cited in *Toxic Torts*, convinces the Court that the Wisconsin Supreme Court would adopt some form of the doctrine. The *Shawver* case is not to the contrary. The conclusion that the manufacturer's duty was not delegable was in the context of a case where the dangerousness of the product was based on its lack of safety features. This case presents a far different question—that of a manufacturer whose product was allegedly unreasonably dangerous because it failed to carry warnings on how to use it properly. Despite the fact that "strict liability in tort focuses, not on the failure to exercise ordinary care, but on whether the seller has marketed a dangerously defective product," *Shawver,* at 231, the duty to warn case necessarily implicates the manufacturer's duty over and above the dangerousness of the product. It is the manufacturer's failure to exercise ordinary care in preparing an adequate warning that makes the product dangerous. (The Court will leave the task of distinguishing between negligence and strict liability in the duty to warn to those who count angels on the heads of pins.) A manufacturer who cannot control the content of the warning passed to the ultimate user can hardly be guilty of failing to exercise ordinary care with respect to such warnings or of producing an unreasonably dangerous product, the dangerousness of which is caused by inadequate warnings that it did not give and could not improve.

■ In fact, the Court concludes that *Shawver* points in the direction of this Court's conclusion. Despite the fact that a manufacturer's duty is not delegable, the Court exonerated the defendant because an element of strict liability was not met, that

the manufacturer expects it to reach the consumer without substantial change. *Id.* at 232. So it is here. Just as the *Shawver* defendant expected the safety features to be incorporated into the control system that would be installed by the plaintiff's employer, Dow supplied a product that would carry the label of another. It could not, or did not, expect that the product would reach the ultimate user with any warnings that it might apply. At least the jury was entitled to conclude as much, and it may have done so.

■ The Court must conclude that the bulk supplier instruction was properly given. The instruction did not, as plaintiff asserts, eliminate the duty to warn. The jury was also instructed that the defendant was required to give adequate warnings to the intermediary with the reasonable expectation that they would be passed along to the ultimate user.

■ B. Second, plaintiff argues that the Court erred in not allowing evidence of Frank Blodgett's tremor to be presented to the jury. It is plaintiff's position that this evidence was relevant because Blodgett (who died prior to trial) had asserted in his deposition that his good health was evidence of the safety of Weevil-Cide. Plaintiff argues that the evidence of his tremor, which is a symptom of carbon disulfide poisoning, would have contradicted his deposition testimony.

This evidence is clearly irrelevant to any issue in the case. First, it is certain beyond a reasonable doubt that the jury did not require such evidence to the extent that it went to causation since it concluded that the fumigant caused the plaintiff some injury. In fact, this issue was no more than a side show. The only argument that merits serious discussion is plaintiff's assertion that an agent of Dow, Dr. Henry Gray, had an opportunity to observe Blodgett at Duluth, Minnesota in 1974. Plaintiff argues that this observation should have put Dow on notice that Blodgett was suffering the effects of toxic poisoning. However, there was no medical testimony demonstrating

that Blodgett's tremor was caused by exposure to Weevil-Cide.

The Court remains convinced that the evidence excluded was irrelevant. If relevant, its exclusion was harmless but necessary to avoid the danger of unfair prejudice. As a footnote, however, it should be added that testimony of Blodgett's tremor condition *was* presented from another source.

■ C. Third, plaintiff makes a fairly broad objection to the Court's rulings concerning expert testimony and the manner in which exhibit evidence was presented to the jury.

The more general of these objections concerns the Court's decision to bar the reading of exhibits and extensive statements summarizing their contents by witnesses. Since exhibits are evidence, the recitation of the contents is cumulative and imposes on the Court and jury a significant waste of time. This is especially true in a case of this nature where the reading of exhibits could have added days to a lengthy trial. The Court has the inherent power to develop tools to promote the efficient presentation of cases. *See,* for example, *Eash v. Riggins Trucking Inc.,* 757 F.2d 557, 564 (3rd Cir.1985) (inherent power to impose monetary sanctions for activities short of contempt). The Court would also note that thoughtful consideration of such evidence as well as efficiency are promoted by the Court's practice. Rulings on the admissibility of exhibits generally precede the beginning of the trial. Counsel are freely allowed to read from exhibits in closing argument so that consideration of the evidence can be integrated into the context of the case in a manner consistent with the party's theories. The parties can, of course, freely designate those exhibits that they wish to be available to the jury during its deliberations, and can even have them shown to the jury during the course of their initial presentation. Finally, the Court carefully allowed quotation and summarization when it was necessary to understand the witness' comments concerning the exhibits.

The Court discerns no prejudice to anyone from this practice, and is convinced that it is much more likely to produce a thoughtful verdict and thereby promote the ends of justice. Rule 611(a) of the Federal Rules of Evidence provides ample authority.

A more specific objection, although not particularly well documented, concerns plaintiff's perception that objections to his redirect examination of experts were consistently sustained as cumulative. The one example cited in the brief does not convince the Court that its rulings were in error, nor that plaintiff was prejudiced. The testimony of Larry Chapman which plaintiff sought to produce on redirect would have clearly been cumulative of his direct testimony. Dow is correct. Plaintiff prevailed on the issue which was the major thrust of Chapman's testimony—that of causation. Finally, the Court is unconvinced that Chapman's testimony on progressivity of the injuries suffered by the plaintiff was undercut by the cross examination. The fact that the jury verdict for future medical expenses was only $5,000 does not indicate that the jury rejected the notion that the injury was progressive. The evidence concerning the progressivity of the plaintiff's symptomology was fairly overwhelming, but the evidence of the need for future medical treatment was not. At any rate, this argument is not relevant to plaintiff's motion for a new trial against Dow inasmuch as the testimony excluded did not go to any issue related to Dow's liability.

■ D. Fourth, the plaintiff argues that the Court erroneously excluded plaintiff's exhibit 154. The document, entitled "Carbon Tetrachloride Notes" was a memorandum of Dr. Henry Gray, an employee of Dow. The Court decided well before trial that evidence concerning this chemical compound, a component of the 80/20 fumigants which injured plaintiff, was irrelevant. It was undisputed that plaintiff's injuries were caused by the other major component of the product, carbon disulfide. The Court does not intend to additionally comment on its decision concerning this issue.

The primary concern of the document was the danger associated with improper use and handling of the fumigant because of its carbon tetrachloride content. It was properly excluded. Further, the Court agrees with the defendant that as an admission related to the product itself, the document was cumulative of other evidence. By 1977, the date of the document, plaintiff had already stopped applying the fumigant, although he may still have been subject to secondary exposure. Application practices were the subject of the document. Dr. Gray's knowledge of and disagreement with Frank Blodgett's ideas concerning the fumigant was established by other evidence. The deposition testimony of Gray concerning the Duluth meeting was closely associated with carbon tetrachloride, and was far more prejudicial than probative of any of the issues related to Dow's liability.

E. Fifth, the plaintiff argues that the Court erred in excluding plaintiff's exhibit 153, another memorandum from one of Dow's employees, Robert Hawkins. The document was commonly referred to as the "milking strategy" memorandum, after a phrase employed by the author. Plaintiff characterizes the memorandum as an expression of the view that Dow should not engage in any direct research spending effort nor incur selling expenses associated with 80/20 fumigants. This document is relevant, according to plaintiff, because he continued to be exposed to the product during the period covered by the memorandum.

The Court excluded this document on the grounds of relevance because it related to Dow's withdrawal from the fumigant market and was, therefore, a subsequent remedial measure, as more fully explained in a previous memorandum in this case. The document was prepared as a consequence of the consideration then being given by a governmental agency concerning the re-registration of fumigants. The author discussed whether Dow should incur the costs of this process in light of the profitability of the product. The document was not relevant to causation, and it did not address an issue related to Dow's liability. It may have been noteworthy with respect to puni-

tive damages (had Dow been found liable) because of the questionable wording. However, in context, the memorandum was not even probative on this issue.

F. Finally, plaintiff at time of argument on his motions after verdict has belatedly objected to a practice of this Court.

Instead of allowing counsel to read thousands of pages of deposition testimony to the jury, this Court requires that a deposition be reduced to a five-page narrative summary, with an appropriate response from the other parties. This practice, of course, fails to achieve the goal of marathon trials, and certainly chills counsel's quest to enter the Guiness Book of Records for longest trials on any given subject. The practice, however, known to plaintiff's counsel prior to the commencement of this action, reduces confusion, eliminates irrelevant and immaterial testimony, diminishes the needless presentation of cumulative evidence, and provides the meaningful trial which all litigants deserve and which is envisioned by Rule 1, Federal Rules of Civil Procedure, securing a just determination of every action.

### ORDER

IT IS ORDERED that plaintiff's motion for a new trial against Dow Chemical Company is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for a new trial on the issue of punitive damages against Weevil-Cide Company and Research Products Company is DENIED.

IT IS FURTHER ORDERED that the motion of defendant Weevil-Cide Company, Inc. and defendant Research Products Company for judgment notwithstanding the verdict or, alternatively, for a new trial, is DENIED.