INDEPENDENT SCHOOL DISTRICT NO. 14, of Fridley, Minnesota, Appellant,

v.

AMPRO CORPORATION, Portapit Division, defendant and third party plaintiff, Respondent,

Walter P. Kehler, etc., et al., Defendants,

United Foam Corporation, Third Party Defendant, Respondent.

No. CO–84–931.

Court of Appeals of Minnesota.

Jan. 22, 1985.

Review Denied March 29, 1985.

Joseph F. Lulic, Cosgrove & Hanson, Minneapolis, for appellant.

Robert E. Salmon, William D. Flaskamp, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for AMPRO Corp.

Robert W. Murnane, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, for United Foam Corp.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

LANSING, Judge.

Appellant Independent School District No. 14 (ISD) of Fridley, Minnesota, appeals from the trial court's judgment granting, at the close of all of the evidence, the motion of respondents AMPRO Corp., Portapit Division (AMPRO), and United Foam Corp. (United Foam) for a directed verdict. AMPRO and United Foam filed a notice of review with this court, seeking review of the trial court's pretrial denial of their motion to substitute the Insurance Company of North America for ISD as a named party. We reverse and remand.

### FACTS

On November 19, 1979, a fire occurred in the mezzanine level of the Fridley High School gymnasium, an area ten feet above gymnasium floor level with no stairway access. The area was used for storage of aluminum canoes and "Portapit" landing mats.

The fire started in the Portapits (which contained approximately 1,200 pounds of

polyurethane) after two students, Brent Kehler and Michael Wilson, skipped their classes and decided to "make a little smoke." Wilson apparently climbed to the mezzanine level and used his butane lighter to light a Portapit on fire. Kehler acted as lookout. Testimony conflicted as to whether gasoline was used.

Substantial testimony was submitted that the Portapits burned very rapidly, with intense heat, and emitted black, dense smoke. Fridley High School suffered considerable smoke damage throughout the building and fire damage to the gymnasium, roof, and athletic equipment. The damage was stipulated to be $288,317.09.

AMPRO manufactured the Portapits, which are nylon vinyl-covered, polyurethane foam-filled landing mats used for high-jumping and pole-vaulting. United Foam supplied the polyurethane foam incorporated into the Portapits.

ISD was insured at the time of the fire by the Insurance Company of North America (INA) under a policy written in conformity with Minn.Stat. § 65A.01 (1978). INA paid for ISD's loss except for a $1,000 deductible. The Kehlers apparently tendered a $1,000 check to ISD, which was rejected by both INA and ISD.

ISD sued the students and their parents for starting the fire and sued AMPRO, alleging that the product was unreasonably dangerous when sold and that AMPRO was negligent in failing to use flame-retardant polyurethane foam and failing to warn of the foam's dangerous propensities. AMPRO brought a third-party claim against United Foam, supplier of the polyurethane foam used in the Portapits. ISD then alleged the same strict liability and negligence theories against United Foam.

Before trial the Kehlers, United Foam, and AMPRO made motions to name INA as the real party in interest. The motions were denied. The Kehlers subsequently entered into a Pierringer release with ISD, and the parents of Michael Wilson were dismissed. The case proceeded to trial with defendants United Foam, AMPRO, and Michael Wilson.

At the close of ISD's evidence United Foam and AMPRO moved for a directed verdict, which the trial judge took under advisement. At the close of all the evidence the trial judge directed the verdict for defendants. Although no memorandum was attached, the trial court stated several bases for its decision: ISD failed to present sufficient evidence to create a jury issue on its products liability theories; ISD's fault outweighed that of AMPRO and United Foam as a matter of law; and the students' arson was an intervening/superseding cause as a matter of law, insulating respondents AMPRO and United Foam from liability.

## ISSUES

1. Did ISD present sufficient evidence to create a fact question for the jury on its products liability theories?

2. Did ISD's fault outweigh that of AMPRO and United Foam as a matter of law?

3. Did the students' arson constitute as a matter of law an intervening/superseding cause, insulating AMPRO and United Foam from liability?

4. Did the trial court err in denying respondents' motion to substitute the Insurance Company of North America for ISD as a named party?

## ANALYSIS

### I

In reviewing a directed verdict, this court must examine the sufficiency of the evidence presented to raise a fact question for the jury's decision. *See, e.g., Midland National Bank v. Perranoski*, 299 N.W.2d 404, 409 (Minn.1980). Considering the record as a whole and treating as credible all reasonable inferences from ISD's evidence, *see id.*, we must determine whether "in light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, or where * * * it would be contrary to the law applicable to the case," *J.N. Sullivan*

*and Associates, Inc. v. F.D. Chapman Construction Co.,* 304 Minn. 334, 336, 231 N.W.2d 87, 89 (1975). The trial court's directed verdict indicates that it did not consider ISD's evidence sufficient to raise a fact issue on any of its product liability theories.

### Strict Liability

A prima facie case of strict liability against a manufacturer requires evidence that (1) the product caused an injury, (2) the product was in a defective condition unreasonably dangerous for its use, and (3) the defective condition existed when the product left the hands of the manufacturer. *Farr v. Armstrong Rubber Co.,* 288 Minn. 82, 90–91, 179 N.W.2d 64, 69 (1970).

It is unrefuted that AMPRO manufactured the Portapits and that United Foam supplied the polyurethane foam incorporated into them. The damages are not in dispute. The sufficiency of ISD's evidence on the remaining elements—whether the Portapit was defective and unreasonably dangerous and whether the defective condition existed when the product left the manufacturer's hands—must be examined.

AMPRO and United Foam argue that ISD failed to provide evidence of an essential element of a strict liability claim because it presented no evidence that the Portapit was unreasonably dangerous for its normal anticipated use—cushioning landings after high jumps and pole vaults. AMPRO presented considerable evidence that the Portapit is safe for that use.

Storage in a school building, in an area close to students and to valuable equipment, however, is also a normal, anticipated use. ISD presented considerable evidence concerning how quickly and easily the foam ignites, the intense heat with which it burns, and the large amount of thick, black smoke produced. Fires from various causes are not unexpected in school buildings or at athletic events. For example, one of the students who testified described the mezzanine storage area as a place where students would go to smoke cigarettes.

ISD presented sufficient evidence to at least present to a jury the question of whether the Portapit's burning propensities made it unreasonably dangerous for use and storage in and around a school building.

### Negligence in failing to use flame-retardant polyurethane foam

ISD contended at trial that AMPRO was negligent in failing to incorporate flame-retardant foam into Portapits and that United Foam was negligent in producing non-flame-retardant foam when it knew of the problems associated with the burning of polyurethane foam. The elements of a negligence claim are duty, breach of that duty, proximate cause, and damage. *Hud v. Snyder Body, Inc.,* 326 N.W.2d 149, 157 (Minn.1982). ISD presented considerable evidence of the damage it incurred from smoke and fire. Breach is provable if a duty exists here.

The question of duty is more difficult. It was asserted at trial that ISD "wholly" failed to establish that the type of dense foam used in Portapits could be made flame-retardant. ISD, however, presented evidence indicating a general industry-wide concern, before ISD's purchase of the Portapit, about the burning propensities of polyurethane foam. It also presented some credible evidence indicating that flame-retardant foam could be used in Portapits without unreasonable cost and that United Foam was manufacturing some flame-retardant polyurethane foam at the time. In addition, ISD presented evidence that AMPRO did not test the burning characteristics of the foam and that it relied on United Foam for such information. Taking as credible all reasonable inferences from ISD's evidence, the jury could have determined that a reasonable manufacturer would have tested the foam for extraordinary burning propensities and taken precautions to guard against those propensities.

### Negligence in failing to warn

■ ISD presented credible evidence that no warning regarding flammability was given on the Portapit itself or in catalogues or sales literature. A claim based on failure to warn can provide a basis for recovery even in cases where the product itself is determined not to be defective. *See Bigham v. J.C. Penney Co.*, 268 N.W.2d 892, 897 (Minn.1978) ("Minnesota courts repeatedly have held suppliers of products liable for negligence for products which are not in themselves defective in the sense of being flawed, but which are rendered dangerous by lack of instructions or warnings").

Respondents argue that they had no duty to warn because the danger that the Portapit might burn is an obvious danger of which ISD should have been aware. *See* W. Prosser, *Handbook of the Law of Torts* § 96, at 649 (4th ed. 1971) ("there is certainly no usual duty to warn the purchaser that a knife or an axe will cut, a match will take fire, dynamite will explode, or a hammer may mash a finger"). In addition, they allege that ISD admitted knowing that the Portapit might burn if someone tried to light it and that they therefore had no duty to warn of a danger already known.

Respondents, however, fail to distinguish ordinary burning from the hot, rapid, smoky burning of which ISD presented evidence. This is a different, more serious, and more unexpected danger than that posed by ordinary flammable items. Such a danger is not obvious, and while ISD admitted knowing that Portapits might burn, it indicated no knowledge of the speed or intensity with which they burned.

■ Finally, AMPRO argues that the warning issue is not relevant because a warning would have made no difference to the student arsonists. A flammability warning might, however, have changed the way the school district used the Portapits (by storing them outside or under lock and key). In addition, a warning might have affected the students' actions. They intended to "make a little smoke"—not necessarily to damage the entire building.

ISD presented sufficient evidence to present to the jury its negligence theories against AMPRO and United Foam.

## II

The trial court, in directing a verdict, determined that ISD's fault outweighed that of AMPRO and United Foam as a matter of law because the school district was negligent in supervising the students and because it failed to have sprinklers and an operational fire alarm system.

ISD presented evidence of its methods for controlling and supervising students and evidence that the Portapits were not readily accessible to students because they were stored in the mezzanine area, ten feet above the gymnasium floor with no stairway access.

ISD also presented evidence that it was not required by law or code to have a sprinkler system, and an expert testified that while a sprinkler "may retard the fire slightly and prolong the fire * * * I don't think it would extinguish the fire or control the fire." ISD introduced testimony that its failure to have an operational alarm system caused no delay or additional damage because no one tried to pull the fire alarm until after a direct call had already been made to the fire department.

■ Apportioning fault among parties is usually a jury question. *See, e.g., Steinhaus v. Adamson*, 304 Minn. 14, 20, 228 N.W.2d 865, 869 (1975). The evidence regarding the extent of each party's fault was conflicting and therefore appropriate for evaluation by a jury.

## III

■ The trial court also determined as a matter of law that the students' vandalism was an intervening/superseding cause, insulating respondents AMPRO and United Foam from liability. As a general rule, a criminal act of a third person will break the chain of causation, constituting a superseding cause and insulating the original wrongdoer from liability. *See Hilligoss v.*

*Cross Cos.*, 304 Minn. 546, 547, 228 N.W.2d 585, 586 (1975). A superseding cause, however, is not legally sufficient if it is reasonably foreseeable. *See, e.g., Illinois Farmers Insurance Co. v. Tapemark Co.*, 273 N.W.2d 630, 635–36 (Minn.1978) (discussing *State Farm Mutual Automobile Insurance Co. v. Grain Belt Breweries, Inc.*, 309 Minn. 376, 245 N.W.2d 186 (1976)). Furthermore, the specific conduct need not have been reasonably foreseeable if the unreasonable risk of harm was reasonably foreseeable. *See Rum River Lumber Co. v. State*, 282 N.W.2d 882 (Minn.1979).

■ Here, the jury could reasonably have determined that vandalism involving fire is foreseeable in a high school. This is particularly significant, considering the testimony that students smoked in the mezzanine area. A careless student or one interested in minor damage (like cigarette burns in the Portapit) could conceivably have started a fire as serious as the one that occurred. *Cf. Grain Belt*, 309 Minn. at 381, 245 N.W.2d at 189 (theft of beer truck and subsequent collision were foreseeable when the truck was left with keys in the ignition in a high-crime, hard-drinking area). In addition, the jury could reasonably have found that the unreasonable risk of harm was foreseeable, based on ISD's evidence that the foam ignited easily and burned rapidly and intensely.

## IV

AMPRO and United Foam seek review of the trial court's denial of their motion to substitute ISD's insurer, the Insurance Company of North America, for the school district as the named party. ISD argues in response that the trial court's pretrial denial of respondents' motion is not reviewable. It claims that respondents, instead of seeking review of that oral ruling, should have sought review of a previous special-term order denying the Kehlers' motion for substitution (made before their Pierringer agreement).

■ Respondents' motion arguably was improperly before the trial court because respondents did not argue any changed circumstances or changed law between the first and second motions. The trial court, however, did rule on respondents' motion. Therefore, the ruling constitutes an "order," appealable under Minn.R.Civ.App.P. 106 ("A respondent may obtain review of a judgment or order entered in the same action which may adversely affect him by filing a notice of review").

AMPRO and United Foam claim that INA should have been substituted for ISD as the named party because ISD no longer had any monetary interest in the outcome of the case and therefore was not a real party in interest. *See* Minn.R.Civ.P. 17.01.

■ The purpose of the real party in interest rule is to protect defendants from facing multiple actions on a single claim by requiring that the party asserting the claim have such interest in it that a final decision will bar subsequent suits. *See Blair v. Espeland*, 231 Minn. 444, 447, 43 N.W.2d 274, 276 (1950); *Norby v. Bankers Life Co.*, 304 Minn. 464, 467, 231 N.W.2d 665, 668 (1975). A final judgment here will be res judicata as to INA. Therefore, there is no threat of multiple litigation.

In addition, Rule 17.01 allows "a party with whom or in whose name a contract has been made for the benefit of another, or a party *authorized by statute* [to] sue in his own name without joining with him the party for whose benefit the action is brought" (emphasis added). Minn.Stat. § 65A.01, subd. 3 (1978), which sets forth the policy provisions of the Minnesota Standard Fire Insurance Policy, authorizes an insurer to place the following clause within policies:

> This company is subrogated to, and may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this company; and the insurer may prosecute therefor in the name of the insured retaining such amount as the insurer has paid.

This clause allows the insurer, by contract, to become subrogated to the rights of its

insured for any loss the insurer has paid and to sue in the name of the insured.

### DECISION

The trial court's directed verdict was improper when the school district presented sufficient evidence to create a factual question for the jury on its products liability theories, on whether its fault outweighed that of respondents as a matter of law, and on whether the students' vandalism constituted an intervening/superseding cause as a matter of law.

The trial court correctly allowed the case to proceed as originally captioned, denying respondents' motion to substitute the school district's insurer as the named party.

Reversed and remanded.