CONWED CORPORATION, a
Delaware corporation,
Plaintiff,

v.

UNION CARBIDE CHEMICALS AND
PLASTICS COMPANY, INC. (f/k/a
Union Carbide Corporation), a New
York corporation, Defendant and
Third–Party Plaintiff,

v.

MacArthur Company, a Minnesota
corporation, Third–Party
Defendant.

Civ. Action No. 5–92–88.

United States District Court,
D. Minnesota.

July 3, 2001.

Stich, Angell, Kreidler, Brownson & Ballou, P.A. by Robert D. Brownson, Minneapolis, MN, and Piper Marbury Rudnick & Wolfe by Michael R. Goldman, Chicago, IL, for Plaintiff Conwed Corporation.

Foley & Lardner by Trevor J. Will and Michael Rosenberg, Milwaukee, WI, for Defendant and Third–Party Plaintiff Union Carbide Chemicals and Plastics Company, Inc.

## ORDER

ALSOP, Senior District Judge.

This matter comes before the Court on Defendant and Third Party Plaintiff's, Union Carbide Chemicals and Plastics Company, Inc. (f/k/a Union Carbide Corporation) ("Union Carbide"), motion for

summary judgment on the grounds that Plaintiff Conwed Corporation (f/k/a Wood Conversion Company) ("Conwed") was a sophisticated user of asbestos. For the reasons explained below, the Court will deny Defendant's motion.

## I. BACKGROUND

Between 1959 and 1974, Conwed manufactured asbestos-containing ceiling tiles in its plant in Cloquet, Minnesota. From 1965 through July 1974, Conwed purchased Calidria asbestos fiber, a product mined, milled, processed, and sold by Union Carbide, for use in the ceiling tiles. In 1986 Conwed, a qualified self-insured employer under the Minnesota Workers' Compensation Act, began receiving workers' compensation claims from its former Cloquet plant employees alleging that they had contracted asbestos-related diseases due to their exposure to asbestos while employed with Conwed. Accordingly, Conwed seeks recovery under Minnesota's workers' compensation third party liability law, Minn.Stat. § 176.061, amounts of workers' compensation benefits it has paid or will pay in the future to former employees of its Cloquet plant who suffer asbestos-related diseases from exposure to Union Carbide's asbestos product or are expected to suffer such diseases in the future. The facts are more fully laid out in the Court's Certification Order of December 14, 2000.

This action was filed in the United States District Court for the District of Minnesota under diversity jurisdiction in 1992 and was transferred to the Eastern District of Pennsylvania, MDL 875, for pretrial multidistrict handling of asbestos-related litigation in 1993. The action was remanded to this Court on June 16, 2000. The Court heard oral argument on this matter on November 21, 2000, and certified five questions to the Minnesota Supreme Court on December 14, 2000. Union Carbide's motion for summary judgment on the grounds that Conwed was a sophisticated user of asbestos was not among the matters certified to the Minnesota Supreme Court and, thus, will be decided in this Order.

## II. DISCUSSION

### A. Standard for Summary Judgment

Summary Judgment is appropriate only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Disesa v. St. Louis Cmty. Coll.*, 79 F.3d 92, 94 (8th Cir.1996). The Court views all admissible evidence, and draws all justifiable inferences, in favor of the nonmoving party. *Miners v. Cargill Communications, Inc.*, 113 F.3d 820, 823 (8th Cir.1997).

The test for whether there is a genuine issue of material fact is two-fold. First, the materiality of a fact is determined from the substantive law governing the claim. Only disputes over facts that might affect the outcome of the suit are relevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir.1987). Second, any dispute of material fact must be "genuine." A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. It is the nonmoving party's burden to demonstrate there is evidence to support each essential element of the claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, the nonmoving party need not prove each issue of material fact, but rather must set forth sufficient facts indicating a material fact dispute requiring resolution by a trier of fact. *See Reich v.*

*ConAgra, Inc.*, 987 F.2d 1357, 1360 (8th Cir.1993).

## B.   Sophisticated User

■ Union Carbide asserts that summary judgment should be granted because Conwed was a "sophisticated user" of asbestos. Because material facts are in dispute regarding wether Conwed was a sophisticated user of Calidria asbestos, whether Union Carbide provided Conwed with any meaningful warnings regarding any superior knowledge it may have had regarding the dangers of Calidria asbestos, and whether it was reasonable for Union Carbide to rely on Conwed to warn Conwed's employees of such dangers, the Court will deny Union Carbide's motion for summary judgment on this issue.

■ Union Carbide argues that it should be absolved of liability because it was a bulk supplier of the raw material of asbestos to Conwed, who was a sophisticated user of that material.[1] *See generally Hill v. Wilmington Chem. Corp.*, 279 Minn. 336, 156 N.W.2d 898 (1968); *In re TMJ Implants Prods. Liab. Litig.*, 872 F.Supp. 1019 (D.Minn.1995) (hereinafter *TMJ Implants* ). The "fundamental tenet" of the sophisticated user doctrine is that "a manufacturer should be allowed to rely upon certain knowledgeable individuals to whom it sells a product to convey to the ultimate users warnings regarding any dangers associated with the product." *TMJ Implants*, 872 F.Supp. at 1029. "When the supplier has reason to believe that the purchaser of the product will recognize the dangers associated with the product, no warnings are mandated." *Id.* (quotations and citation omitted). Thus, "[b]ulk suppliers of products to manufacturers who are sophisticated users, have no duty in negligence, strict liability, or breach of warranty to warn ultimate purchasers of the manufacturer's product." *Id.* (quoting American Law of Products Liability 3d § 5.23 (Matthew J. Canavan, ed.1994)).

While the Minnesota Supreme Court has not expressly adopted the "sophisticated user" doctrine, it has held that the bulk supplier of a raw material has the duty to communicate any "superior knowledge of the dangerous propensities" of its product to the purchaser, of which the purchaser is not aware.[2] *Hill*, 156 N.W.2d at 904. In order to avail itself of the sophisticated user doctrine, Union Carbide would need to present evidence that Conwed knew of the dangerous propensities of Calidria, that it reasonably relied on Conwed's knowledge of the risks associated with Calidria, and that it also reasonably relied upon Conwed to warn its employees of those risks.[3] To do this, Union Carbide must show that it took some "reasonable, affirmative steps to ascertain that [Con-

---

1.  Union Carbide's argument combines the "bulk supplier" doctrine and the "sophisticated user" doctrine. *See Donahue v. Phillips Petroleum Co.*, 866 F.2d 1008 (involving a distributor's efforts to escape liability by combining both doctrines). "Although there may be shades of difference between these rules as they are applied by the courts," they are fundamentally the same. *In re TMJ Implants Prods. Liab. Litig.*, 872 F.Supp. 1019, 1029 (D.Minn.1995).

2.  Minnesota has, however, adopted the learned intermediary doctrine in the area of prescription drug liability, *see Mulder v. Parke*

Davis & Co., 288 Minn. 332, 181 N.W.2d 882 (1970), which is not directly applicable to the context of this case, *see Donahue*, 866 F.2d at 1013 n. 9 (distinguishing the learned intermediary doctrine under Missouri law).

3.  The Court notes that the dangerous propensities of asbestos are not created or changed by the manufacturing process. *See Arena v. Owens Corning Fiberglas Corp.*, 63 Cal. App.4th 1178, 74 Cal.Rptr.2d 580, 588 (1998). Thus, this case is different in many ways than a case where an ingredient is changed or otherwise becomes more dangerous by its incorporation into a finished product.

wed] was a knowledgeable intermediary," and that such steps rose "above the level of a mere disclaimer" but need not have gone so far as to have required Union Carbide to "second-guess [Conwed's] actions in carrying out its own duty to warn." *Hegna v. E.I. du Pont de Nemours & Co.,* 806 F.Supp. 822, 828–29 (D.Minn.1992) (quoting *Forest v. E.I. DuPont de Nemours & Co.,* 791 F.Supp. 1460, 1467 (D.Nev. 1992)); *see also Donahue v. Phillips Petroleum Co.,* 866 F.2d 1008, 1012 (8th Cir. 1989) (finding that under Missouri law, the "bulk supplier must provide adequate instructions to the distributor next in line or ascertain that the distributor is informed as to the nature of the product and is in a position to convey the information so that the ultimate consumer is apprised of the dangerous propensity of the product" and the sophisticated user doctrine applies "when the *user* of a product knows or reasonably may be expected to know of a particular danger"); *Hegna v. E.I. du Pont de Nemours & Co.,* 825 F.Supp. 880, 884 (D.Minn.1993); *Todalen v. U.S. Chem. Co.,* 424 N.W.2d 73, 78–80 (Minn.App.1988) (rejecting sophisticated user defense and finding that bulk supplier had a duty to warn not only the employer but also the ultimate user employee), *overruled in part on other grounds, Tyroll v. Private Label*

*Chems., Inc.,* 505 N.W.2d 54, 62 (Minn. 1993).

Although Conwed admits to having "*some inkling*" about the potential hazards of asbestos, it asserts that Union Carbide had "*specific superior*" knowledge regarding the hazardous propensities of Calidria" and that Union Carbide "withheld such knowledge from Conwed and in fact went so far as to assure Conwed that Calidria was 'safe.'" [4] Accordingly, the Court finds that there are issues of material fact regarding the level of Conwed's knowledge regarding the potential hazards of Calidria, whether Union Carbide had "superior knowledge" of the dangerous character of Calidria which required it to disclose such dangers to Conwed, and whether it breached its duty to so do.[5] *See generally Hill,* 156 N.W.2d at 902–04; *Hegna,* 806 F.Supp. at 827–29; *Todalen,* 424 N.W.2d at 79. Moreover, Conwed asserts that Union Carbide did not take any steps to ascertain Conwed's knowledge regarding the dangers associated with asbestos at the time it sold the product to it. Thus, material facts remain in dispute regarding whether Union Carbide provided adequate warnings to Conwed, whether it was reasonable for Union Carbide to rely upon Conwed's knowledge of the dangers inherent in Calidria use, and whether it was

**4.** Union Carbide vehemently contests that it ever represented its product as "safe." In a footnote in its Reply brief Union Carbide specifically "denies that its Calidria asbestos was defective or dangerous." One might wonder how the manufacturer using Calidria asbestos was adequately informed of its dangerous propensities, when the supplier continues to deny that its product was dangerous.

**5.** Union Carbide argues that the extent of its knowledge is "irrelevant." According to Union Carbide, Conwed's knowledge and whether it was reasonable for Union Carbide to rely on Conwed to warn its employees are the only proper inquiries. The Court disagrees. It goes without saying that it would not be reasonable to rely on Conwed to warn its em-

ployees of dangers known only to Union Carbide. Additionally, under Minnesota law, a bulk supplier sustains a duty to warn a purchaser manufacturer of the "dangers inherent" in the use of its product not known to the purchaser manufacturer. *Hill v. Wilmington Chem. Corp.,* 279 Minn. 336, 156 N.W.2d 898, 902 (1968); *see also TMJ Implants,* 872 F.Supp. at 1033 ("Defendant had the duty to give adequate warnings 'to the intermediary with the reasonable expectation that they would be passed along to the ultimate user.'") (quoting *Nigh v. Dow Chem. Co.,* 634 F.Supp. 1513, 1517 (W.D.Wis.1986)). Thus, Union Carbide's knowledge of the dangerous propensities of its product remains at all times relevant.

reasonable for Union Carbide to rely on Conwed to warn its employees of those dangers. *See Hegna,* 806 F.Supp. at 827–30.

Finally, Union Carbide asserts that summary judgment should be granted because it was reasonable to expect Conwed not to breach its "non-delegable" duty to warn its workers about asbestos and to take steps to ensure employee safety. *See Yates v. Hanna Mining Co.,* 365 N.W.2d 783, 787 (Minn.App.1985). The Court has considered Union Carbide's argument in this regard and finds, as noted above, that material facts remain in dispute regarding the reasonableness of Union Carbide's reliance on Conwed. *See generally Todalen,* 424 N.W.2d at 78–80; *Restatement (Second) of Torts* § 388 (governing the liability of a supplier of chattel for failure to warn).

\* \* \*

Accordingly, upon its review of the files, motions, and proceedings herein, it is hereby ORDERED that:

1. Union Carbide's motion for summary judgment on the grounds that Conwed was a sophisticated user of asbestos is DENIED.